UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JUAN JIMENEZ,

                      Petitioner,

      -against-

UNITED STATES OF AMERICA,

                      Respondent.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**

04 CV 1443 (RJD)

DEARIE, Chief Judge.

      Petitioner Juan Antonio Jimenez seeks relief from his conviction and sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the application is denied and the petition dismissed.

## BACKGROUND

      Following an investigation into the cocaine smuggling activities of a large-scale Mexican drug cartel, petitioner and others were indicted on charges of drug trafficking and money laundering. On April 8, 2002, pursuant to a plea agreement negotiated with the government, petitioner entered a plea of guilty before me to the money laundering charge (Count Two of the superseding indictment) and in exchange, the government dismissed the trafficking charge (Count One). The trafficking charge carries a ten-year mandatory minimum term of incarceration and a maximum of life, 21 U.S.C. § 841(b)(1)(A)(ii)(II), while the laundering count to which petitioner pled carries a twenty-year statutory maximum and no mandatory minimum. 18 U.S.C. §§ 1956(h); 1956 (a)(1)(A)(i).

1

The plea agreement set forth plainly the estimated Guideline sentence petitioner likely faced (between 121 and 151 months), the government's pledge not to move for an upward departure (or to take a position as to where within the 30-month range the sentence should fall), and petitioner's agreement to neither dispute the calculations nor to "file an appeal or otherwise challenge the conviction or sentence in the event that the Court impose[d] a term of imprisonment of 151 months or less."

When accepting petitioner's plea, I advised petitioner in detail of the rights he was giving up by entering his plea, including specifically the right to appeal or challenge the sentence provided it did not exceed 151 months, and he acknowledged his complete understanding. I asked petitioner's attorney Stuart Grossman if he had any problem communicating with petitioner or any doubt about petitioner's ability to understand the rights he was giving up by pleading guilty, and Mr. Grossman said he did not. I also asked petitioner directly whether he had enough time with Mr. Grossman to review the plea agreement and whether he felt he understood the document, and he responded in the affirmative. Petitioner then admitted that he acted as courier for funds he knew to be the proceeds of narcotics transactions.

One month later, on May 8, 2002, I received a letter from Mr. Grossman advising me that petitioner wished to withdraw his plea. According to the letter, petitioner claimed that during a meeting at the United States Attorney's office he had been coerced, by both the government and his codefendants, into entering into the plea agreement. Mr. Grossman also stated that because he, too, was present during that meeting and a witness to the alleged events, there existed a potential conflict of interest requiring the assignment of new CJA counsel. At a status conference on May 30, 2002, I relieved Mr. Grossman, appointed Emily Daniel to represent petitioner, and held the motion to withdraw the plea in abeyance.

Through Ms. Daniel, petitioner no longer sought to withdraw the plea but instead challenged components of the guideline calculation, arguing for a sentence of between 87 and 108 months. As reflected in Ms. Daniel's comments to me during the sentencing proceeding on March 31, 2003, under the guidance of his new attorney petitioner apparently appreciated that, given the totality of the circumstances, it was in his best interest to honor the plea agreement after all.

> I am aware that . . . he obviously signed the plea agreement with this point calculation. I have advised him to go along even if he doesn't agree entirely with the point calculation because he also has two other cases which I hope to package with this case . . . I think it would sort of be a moot point for him to proceed to trial if he can get the same amount of time on those other cases. So neither [petitioner] nor I totally agree with the point calculation . . . however he did stipulate in the plea agreement to that amount. My way of dealing with it was [sic] then stress downward departure, family circumstance . . (Tr. at 6)

Compelling as I found Ms. Daniel's arguments on behalf of petitioner's family and petitioner's own declaration that the prosecution was "hitting [his family] a lot harder than" it was petitioner, Tr. at 14, I did not depart downward but sentenced petitioner to the low end of the range provided in the plea agreement, 121 months. I have been advised that on or about September 28, 2009 petitioner was released from the Bureau of Prisons to be supervised through the District of Arizona.

## DISCUSSION

Little discussion is required, as the petition is barred by the waiver of appellate or post-conviction rights contained in petitioner's plea agreement, which is fully enforceable. See, e.g., Jimenez v. United States, 2010 WL 2816973 (S.D.N.Y. July 15, 2010) (citing extensive authority). The only argument open to petitioner is "an attack on the validity of the process by

3

which the waiver has been produced," Frederick v. Warden, Lewisburg Correctional Facility, 302 F.3d 192, 195 (2d Cir. 2002) (citations omitted), cert. denied, 537 U.S. 1146 (2003), but to the extent that is what the largely unintelligible petition seeks to do, it fails. I find no basis whatsoever for questioning the process by which petitioner's waiver was obtained. My colloquy with petitioner and with Mr. Grossman during the plea proceedings fully satisfied me then, as they do now, that the waiver was knowingly and voluntarily made.

The remaining allegations of the initial petition are unintelligible and frivolous on their face. Representative of the lot is the assertion that Ms. Daniel had a conflict of interest and was therefore ineffective because she "refused to tell [petitioner] that she, the prosecuting attorney and judge are all members of the same labor union aka State BAR associate [sic] . . . and that all three are unregistered foreign agents." Pet. at 5. Of the same ilk is petitioner's insistence that he was not informed of the full nature of the charges against him because the proceeding was conducted according to "the United States Code which is a private, corporate copyrighted, non-constitutional, municipal code owned and published by a foreign corporation." Id.

In a supplemental filing, petitioner appears to seek relief under post-Apprendi changes in sentencing law, and to fault his attorney for not having lodged anticipatory objections at the time of his plea or sentence. But petitioner's conviction became final on or about April 16, 2003 (when the time for filing an appeal lapsed), before the decisions in either Blakely v. Washington, 542 U.S. 296 (2004), or United States v. Booker, 543 U.S. 220 (2005), were issued, and neither has retroactive reach. Green v. United States, 397 F.3d 101 (2d Cir. 2005); Carmona v. United States, 390 F.3d 200 (2d Cir. 2004).

## CONCLUSION

The application for relief under 28 U.S.C. § 2255 is denied and the petition dismissed. Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), so a certificate of appealability will not issue.


SO ORDERED.

Dated: Brooklyn, New York
       August 9, 2010

                                                s/ Judge Raymond J. Dearie

                                                RAYMOND J. DEARIE
                                                United States District Judge